IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PRESTON SHANE ALLEN,

      Plaintiff,

v.                                   CASE NO. 1:13-cv-6-MW-GRJ

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al..,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court are: (1) Defendants'[1] Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 73; (2) Defendant Albritton's Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 78; and (3) Defendant Barger's Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 90.  In their motions, Defendants Albritton and Barger incorporate and adopt the motion to dismiss filed by Defendants Cannon, Eldridge, L. Lambert, M. Lambert, Livingston, McCray, Richardson, Spradley, and Thompson.  Plaintiff has responded, Doc. 79, and filed a "second reply," Doc. 88. After review, the Court determines that the motions to dismiss should be granted, and the case dismissed for failure to exhaust prior to filing suit.

## I.  BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

Previously, after Plaintiff was given multiple opportunities to amend, the Court

---

[1]Cannon, Eldridge, L. Lambert, M. Lambert, Livingston, McCray, Richardson, Spradley, and Thompson.

dismissed Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could be granted.  Docs. 30, 32.  On appeal, the Eleventh Circuit affirmed the Court's dismissal of all of Plaintiff's claims except for his claim for conspiracy to retaliate against him concerning a February 20, 2013 disciplinary hearing. Doc. 41.  The case was reversed and remanded for further proceedings regarding that claim.

After the case was remanded the Court directed Plaintiff to file a fourth amended complaint to include only the remaining claim for retaliation regarding the February 2013 disciplinary hearing. The Fourth Amended Complaint, Doc. 49, is now the operative pleading.  After screening, the Court dismissed several Defendants because there were no allegations against them, and served the Complaint on the remaining Defendants.  Docs. 51, 56, 50.

 Plaintiff, a prisoner in the custody of the Florida Department of Corrections, alleges that throughout 2012 he filed grievances "concerning the inappropriate conduct of various Mayo CI Annex officials," but nothing was ever done to correct their actions. Thus, Plaintiff alleges "due to the totality of the conditions created by the Department of Corrections officials acts of conspiracy have become commonplace by the Department Employees, allowing continual harassment and human rights violations."  Plaintiff alleges that it is "widely known that when a grievance is turned in the officials twist the facts or outright commit perjury so all grievances are denied."  Plaintiff further alleges that inmates are targets for writing grievances and officials conspire to place a fraudulent disciplinary report on the prisoner, and find the prisoner guilty.

More specifically, Plaintiff alleges that in December 2012, he filed a grievance

against Officer Richardson, and in January 2013 he filed a grievance against Sergeant Thompson.  As a result, Plaintiff alleges that those officers conspired with Officer Spradley and Sergeant McCray to place him in confinement in retaliation.  On February 17, 2013, Officer Cook (who is not named as a Defendant) "committed collusion" by not reading Plaintiff's  disciplinary report (DR) to him, and fraudulently presented the DR paperwork so that Plaintiff would have to re-do it and spend additional time in administrative confinement.  Plaintiff also alleges that the affidavit he filed with Sergeant Cook disappeared before the February 20, 2013, disciplinary hearing.  Plaintiff alleges that Ms. Livingston did not demand all of the documents submitted and disregarded the witnesses Plaintiff called at his disciplinary hearing, thus, showing collusion.

Plaintiff states that at the February 20, 2013 hearing, he demonstrated that the DR was fraudulent, and although Ms. Livingston wanted to place Plaintiff into confinement she could not do so "without blatantly violating due process," so she placed him into administrative confinement instead, "supposedly" so that she could look over additional evidence.  On February 28, 2013, Plaintiff filed an emergency grievance "to have a hearing set up to address the February 16, 2013," DR and address the reprisal.  Instead, on March 6, 2013, the disciplinary hearing in front of Ms. Livingston resumed. Plaintiff was again placed into administrative confinement.  Plaintiff was released from confinement on March 8, 2013, and placed back into Sergeant Thompson's dorm.

Plaintiff also alleges that he filed another grievance on May 23, 2013, against Sergeant Lambert.  Subsequently, he was charged with disobeying an order by Sergeant Eldridge, where he was found guilty and sentenced to disciplinary

confinement and a loss of gain time, again by Ms. Livingston. Plaintiff alleges his witnesses were never called. Plaintiff alleges that the following Saturday, Officer Canon removed Plaintiff from his cell and told him that Sgt. Lambert's husband called him because he was a hunting buddy, and they conspired with Sgt. Eldridge to place Plaintiff in confinement for the purpose of revenge/reprisal.

Plaintiff alleges that later, in June or July, after he filed a grievance on Captain Albritton, Officer Burgus[2] "committed reprisal," by placing Plaintiff in confinement under a false DR.  Plaintiff states that he listed witnesses, but they were never contacted, and at the hearing Ms. Livingston "committed collusion" by finding him guilty based on the officer's statement alone.

Although Plaintiff's due process and retaliation claims surrounding his June disciplinary hearing have been dismissed, Plaintiff was permitted to provide details about that hearing and the events leading up to it in order to support his claim of conspiracy and retaliation relating to the February 2013 hearing.  Doc. 41 at 8-9.

## II.  STANDARD OF REVIEW

### A. Motion to Dismiss Standard

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the

---

[2]This person has now been identified as Defendant Barger. Doc. 64.

claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  *GJR Invs. v. Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (*overruled on other grounds* by *Iqbal).*

### B. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before proceeding in federal court.  42 U.S.C. § 1997e ("[N]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner...until such administrative remedies as available are exhausted.").  The exhaustion provision is a mandatory precondition to bringing suit in federal court.  *Jones v. Bock*, 549 U.S. 199, 211 (2002).

For the exhaustion requirement to be met under the PLRA, the prisoner must

properly exhaust all available remedies prior to filing suit.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  To properly exhaust all remedies, the prisoner must "take each step within the administrative process" and "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code delineates procedures for inmates to file a grievance against their prison or one of its officials.  The inmate must first file an informal grievance, with several exceptions, including for grievances of disciplinary action.  Fla. Admin. Code § 33-103.005, § 33-103.006(3)(b).  Disciplinary grievances may be brought initially as formal grievances at the institutional level within 15 days of "[t]he date on which the incident or action being grieved occurred."  Fla. Admin. Code § 33-103.006, § 33-103.011.  If the inmate is dissatisfied with the response to the formal grievance, he may then file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance.  Fla. Admin. Code § 33-103.007, § 33-103.011(1)(c).

When a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement.  *See Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). The court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies.  First, the court must review the defendants' factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff.  If, after reviewing

these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  However, if the complaint is not subject to dismissal, the court must make findings of fact necessary to resolve the exhaustion issue.  *Id.*

### III.  DISCUSSION

The events underlying the Fourth Amended Complaint concern Plaintiff's February 2013 disciplinary hearing—the only claim the Eleventh Circuit permitted to proceed.  Docs. 41, 49.  The problem is that Plaintiff filed his initial complaint in this action on January 11, 2013, *before* the alleged retaliatory events in question even occurred.  Doc. 1.  Plaintiff is required to exhaust his claims before filing suit. The filing of an amended complaint alleging exhaustion after suit has been filed does not cure the failure to exhaust prior to filing suit. *Smith v. Terry*, 491 Fed.Appx. 81 (11th Cir. 2012).

Even if the filing date was not sufficient evidence on its face that Plaintiff failed to exhaust, Defendants' motion and exhibits set forth uncontroverted facts showing that Plaintiff failed to exhaust his administrative remedies as to his retaliation claims in this case prior to filing suit. This makes sense because Plaintiff cannot exhaust complaints of retaliatory behavior before the retaliation even occurs.

The Defendants' exhibits demonstrate that Plaintiff did not raise his allegations regarding any conspiracy to retaliate against him regarding the December 25, 2012 or January 18, 2013 Grievances in any of the nine grievances he submitted to the Bureau during the fourteen months prior to January 11, 2013—the date he filed this case.[3]  Of

---

[3] See, Doc. 73, Ex. C, a composite exhibit of all grievances filed by Plaintiff.

those nine grievances, the first, second, third, fourth, fifth, sixth, seventh, and eighth grievances do not contain any allegations regarding a conspiracy or retaliatory actions. Instead these grievances address RLUIPA claims, other religious issues, a law library call-out, the decision to return the grievance regarding the law library call-out without action and a breakdown in the inmate grievance procedure, and the impoundment of a book. None of these grievances placed the FDOC on notice of Plaintiff's claims that there was a conspiracy of retaliation against him by means of issuing a false DR and placing him in administrative confinement in February 2013 as a result of the December 25, 2012 and January 13, 2013 grievances. With regard to the ninth grievance the FDOC did not dispose of this grievance until January 15, 2013, four days *after* Plaintiff filed this action.

Nor can it be argued that Plaintiff exhausted his claims by means of the December 25, 2012 and January 20, 2013 grievances. With regard to the December 25, 2012 grievance (which is the earliest event Plaintiff alleges gave rise to the conspiracy) Defendants assert there is no record Plaintiff actually submitted the grievance. Even if he did, the grievance could not have been exhausted prior to January 11, 2013.[4] The January 20, 2013 grievance could not exhaust any claims in this case because it was filed after the complaint was filed on January 11, 2013.

---

[4] Even if the FDOC received the grievance on December 25, 2012, Plaintiff would have to wait for a response, then submit a formal grievance, then wait for the response to that grievance, then submit a grievance appeal, and the wait for the Bureau to dispose of the appeal. It is impossible for these steps to have been completed before January 11, 2013.

Plaintiff argues that he "filed sufficient grievances" and also contacted other officials and agencies.  Doc. 79.  While it may be true he contacted other agencies, Plaintiff has not submitted any evidence that he properly exhausted his claims in the Fourth Amended Complaint. Indeed the Court cannot imagine that Plaintiff could, given that he had to wait until after the events in question occurred to exhaust.

Accordingly, on this record, it is abundantly clear that Plaintiff failed to exhaust his claims in this case.  Pursuant to the PLRA, this case must be dismissed without prejudice for failure to exhaust administrative remedies.  *See Jones,* 549 U.S. at 211*.*

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that (1) Defendants'[5] Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 73; (2) Defendant Albritton's Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 78; and (3) Defendant Barger's Motion to Dismiss Plaintiff's Fourth Amended Complaint, Doc. 90 should be **GRANTED** and Plaintiff's claims should be **DISMISSED without prejudice**.

**IN CHAMBERS,** at Gainesville, Florida, this 22nd day of July, 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections**

---

[5]Cannon, Eldridge, L. Lambert, M. Lambert, Livingston, McCray, Richardson, Spradley, and Thompson.

shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.